**SO ORDERED.**

**DONE and SIGNED July 23, 2014.**



_____
**STEPHEN V. CALLAWAY**
**UNITED STATES BANKRUPTCY JUDGE**
_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 14-11458 |
| GREEN, CYNTHIA K. | ) | |
| | ) | CHAPTER 7 CASE |
| DEBTOR | ) | |

**ORDER**

On July 21, 2014, this Court held a hearing and determined that:

**FINDINGS OF FACT**

    (a)    On May 22, 2014, the district court (Hicks, J.) issued a memorandum ruling in "*Dorothy Marie Wheeler vs. Glay H. Collier, II, et al*" Case No. 11-cv-1670, in which it struck down Collier's "no money down" fee arrangement for cases filed under chapter 7 of the Bankruptcy Code where Collier collects fees by debiting a debtor's bank account after the case is commenced based upon a pre-petition debit authorization. Judge Hicks held: (a) Collier's post-petition withdrawal of funds from a debtor's bank account for payment of fees violated the automatic stay provision of § 362(a)(6) of the Bankruptcy Code; (b) the pre-petition debit authorization failed to comply with the requirements of § 528 of the Code; and (c) the pre-petition debit authorization is void pursuant to § 526(c)(1) of the Code.

    (b)    On June 23, 2014, Cynthia K. Green (the "**Debtor**") filed a voluntary petition for relief pursuant to chapter 7 of title 11 of the United States Code.

(c) By virtue of his appointment as interim trustee by the United States Trustee and pursuant to the provisions of §§ 701 and 702(d) of the Bankruptcy Code, John S. Hodge (the "**Trustee**") serves as the trustee in this case.

(d) Prior to the commencement of this case, the Debtor executed a retainer agreement on June 18, 2014, which authorized Glay H. Collier and The Collier Law Firm to serve as counsel in his bankruptcy case. By its terms, the pre-petition retainer agreement stated the Debtor agrees to retain Collier "in connection with the preparation and filing of the basic chapter 7 petition necessary to obtain a bankruptcy case number and the associated automatic stay. The client understands that legal representation will terminate upon the filing of the case." It also provides that: "Debtor(s) have not been charged nor owe any fees for the above referenced representation." The agreement also provided that "should the client choose to retain [Collier] for future assistance and services, such as the filing of schedules, transmission of tax returns, pay stubs, or assisting in obtaining and filing Debtor's education certificates, a separate fee agreement will be executed post-petition."

(e) This chapter 7 case was filed on a "no money down" fee basis.

(f) After the commencement of this case, the Debtor executed a post-petition retainer agreement on June 24, 2014. By its terms, that agreement provided that Collier would provide certain services, including: (i) the transmission of all necessary documents including schedules, pay stubs, tax returns and required motions to the court and/or chapter 7 trustee in order to obtain a discharge; (ii) the stopping of any garnishments active before the filing of the chapter 7 petition; (iii) all debtor(s) education fees and the filing of debtor's education certificates; and (iv) representation at the trustee § 341 meeting and any subsequent hearings requiring representation. In the post-petition agreement, the Debtor agreed to pay Collier $2,400.

(g) On the same date that the post-petition retainer agreement was signed, Debtor also signed an ACH debit authorization form which permitted Collier to automatically debit the Debtor's bank account post-petition for $200 per month for twelve (12) months, or $2,400.

(h) In his Disclosure of Compensation of Attorney for Debtor (the "**Fee Disclosure Statement**") filed in the record of this case as Pacer Docket Entry No. 3, page 4, Collier certified that:

    i. Prior to the commencement of the bankruptcy case, the Debtor agreed to pay him $2,400.00 "for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case." (See, § 1);

    ii. Prior to the filing of the Fee Disclosure Statement, he had not received any money from, or on behalf of, the Debtor (See, § 1);

    iii. As of the date of the filing of the Fee Disclosure Statement, there is a "balance due" of $2,400.00 (See, § 1); and

iv. "Debtor has executed two (2) retainer agreements: one executed pre-petition and the second executed post-petition. The attorneys fees that are paid post-petition are solely based on post-petition legal services as set forth in the second, post-petition retainer agreement." (See, § 5.e.).

(i) Collier collected periodic installment payments in this case from the Debtor post-petition pursuant to the Debtor's post-petition ACH debit authorization.

(j) The "Trustee's Motion for Entry of an Order Disqualifying Debtor's Counsel" (the "**Motion**") was properly filed with the Court by the Trustee, on June 30, 2014, as Pacer Docket Entry No. 9.

(k) Notice of the hearing on the Motion was proper and was properly served on the Debtor, her counsel and all parties appearing on the official creditor matrix in this case.

(l) Collier filed an objection to the Motion.

## CONCLUSIONS OF LAW

(m) This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and by virtue of the reference by the district court pursuant to ULLR 83.4.1. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A). *In re Meridian Auto. Systems–Composite Operations, Inc.*, 340 B.R. 740 (Bankr.D.Del.2006) (a motion to disqualify counsel "is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A)"). See, e.g., *Century Indem. Co. v. Congoleum Corp.* (*In re Congoleum Corp.*), 426 F.3d 675, 686 (3d Cir.2005)("One of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it."); *In re Johore Inv. Co.*, 157 B.R. 671, 674 (D.Haw.1985)("[A] motion to disqualify counsel of a major secured creditor is a matter integrally tied to the administration of the estate, and disposing of such a motion is clearly a necessary function of the bankruptcy judge in presiding over the orderly administration of the estate.").

(n) The predicates for the requested relief are 11 U.S.C. §§ 105(a), 329, 362, 526 and 528 and Bankruptcy Rules 2016(b), 2017 and ULR 83.2.4 (made applicable to this case by virtue of LBR 9029-3) and the inherent power of the court to preside over the disqualification of a lawyer representing a party in a bankruptcy case. *In re Snyder*, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874 (1985). A federal court's inherent powers "include the power to control and discipline attorneys appearing before it," *Id.*, and to suspend attorneys who practice before it. *Id.*, 472 U.S. at 643, 105 S.Ct. at 2880. In addition to its inherent power, this Court has the authority to examine the transactions between a debtor and her counsel pursuant to the provisions of 11 U.S.C. §§ 105(a) and 329 and Bankruptcy Rules 2016(b) and 2017 and to enter appropriate orders for relief regarding the attorney-client arrangement between a debtor and his counsel.

(o) The Trustee has standing to file the Motion. *Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671, 673 (5th Cir.1977) ("Appellant has standing to seek disqualification even though it is not an aggrieved client because its attorneys are authorized to

report any ethical violations in the case."); *In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976)("When an attorney discovers a possible ethical violation concerning a matter before a court, he is not only authorized but is in fact obligated to bring the problem to that court's attention.").

(p) In *Milavetz, Gallop & Milavetz, P.A. vs. United States*, 130 S.Ct. 1324, 1329 (2010), the Supreme Court held that an attorney who provides bankruptcy assistance to a debtor is a debt relief agency within the meaning of § 101(12A). Collier is a "debt relief agency" because he is an attorney who regularly provides bankruptcy assistance (defined in § 101(4A)) to assisted persons. The Debtor in this case is an "assisted person" within the meaning of § 101(3). Therefore, Collier must comply with the statutory duties imposed upon a "debt relief agency."

(q) By its terms, § 528(a)(1) of the Bankruptcy Code requires a debt relief agency which provides any bankruptcy assistance services to execute a written contract with an assisted person no later than 5 days after the first visit and prior to the filing of the bankruptcy petition. The contract must explain, clearly and conspicuously: (A) the services such agency will provide to such assisted person; and (B) the fees or charges for such services, and the terms of payment.

(r) In this case, neither the pre-petition retainer agreement nor the post-petition retainer agreement identified the "terms of payment" within the meaning of § 528(a)(1)(B) of the Code, including the date when the periodic installment payment was due and the amount of each payment. Instead, each agreement merely stated there would be a "flat fee of $2,400." The only document which set forth the terms of the payment was the post-petition ACH debit authorization which specified the periodic withdrawal. The ACH debit authorization was not executed by Collier and does not constitute a written contract between a debt relief agency and an assisted person to provide any bankruptcy assistance services.

(s) In addition, the pre-petition retainer agreement purports to improperly limit the duties of a debt relief agency. "Section 526(c)(2)(B) creates a duty (and liability for breach of the duty) by a debt relief agency to file information required by Bankruptcy Code § 521." *In re Fahey* 2009 WL 2855728, 6 (Bkrtcy.S.D.Tex.,2009). Under § 526(c)(2)(B), debt relief agencies providing bankruptcy assistance to an assisted person have certain essential duties they must perform, i.e. the duty "to file any required document including those specified in section 521." Attorneys representing individual debtors in consumer cases filed under chapter 7 of the Code must help debtors file the necessary petition, schedules, statements, and pleadings covering the normal, ordinary, and fundamental aspects of their case.

(t) Like the fee agreement struck down by Judge Hicks in *Wheeler*, the pre-petition retainer agreement and post-petition retainer agreement used in this case do not comply with the "material requirements" of § 528 and, therefore, like Judge Hicks, this Court hereby finds that they are void under § 526(c)(1)(if the contract between a debt relief agency and an assisted person for bankruptcy assistance does not comply with the "material requirements" of § 528, it "shall be void…").

(u) Pursuant to Uniform Local District Court Rule 83.2.11, made applicable by virtue of Local Bankruptcy Rule 9029-3, Collier was <u>required</u> to continue to render professional

services to the Debtor after the case was filed "unless the court permits him or her to withdraw from the case." Historically, this court has not permitted a lawyer to withdraw from a case unless the lawyer has a conflict of interest. In this court, if a lawyer starts a case, he or she must make a bona fide effort to finish it.

(v) By operation of law (§ 526(c)(2)(B) of the Code governing debt relief agencies and ULR 83.2.11 governing attorneys), once Collier agreed to file the bankruptcy case pursuant to the pre-petition fee contract, he was required to render (and the Debtor was entitled to receive) all routine post-petition services essential to the case, such as filing documents required by § 521(a)(1) "unless the court permits him … to withdraw from the case" as provided in ULR 83.2.11. As such, the entire fee arrangement constitutes a pre-petition contract and any payment obligations imposed on the Debtor by virtue of the second (post-petition) fee contract would constitute a pre-petition claim against the Debtor within the meaning of § 101(5). Such a "claim," and the post-petition attempt to collect payment of said claim, is subject to the restrictions of both the automatic stay, § 362(a)(1) & (6), and the discharge injunction, § 727(b) & § 524(a). **See**, *Wheeler* (Hicks, J.).

(w) In the Fifth Circuit, courts initially look to the district's local rules when considering motions to disqualify. *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir.1995). In the Western District of Louisiana, ULLR 83.2.4 provides that the Louisiana Rules of Professional Conduct shall apply. The Louisiana Rules, however, "are not the sole authority governing a motion to disqualify" in federal cases. *FDIC*, 50 F.3d at 1312. "Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir.1992). Because the Fifth Circuit recognizes the American Bar Association Model Rules of Professional Conduct as the national standard, this court will apply both the ABA Model Rules and the Louisiana Rules in its analysis. *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009).

(x) Rule 1.2(c) of the Louisiana Rules of Professional Conduct and the ABA Model Rule each provide: "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."

(y) In this case, the pre-petition retainer agreement failed to comply with Rule 1.2(c) of the Louisiana Rules of Professional Conduct and the ABA Model Rule because its limitation of the scope of the representation was not reasonable under the circumstances. This court's ruling is consistent with other courts that have considered the core duties of a bankruptcy lawyer. See, for example, *In re Minardi* 399 B.R. 841 (Bkrtcy.N.D.Okla.,2009) which addressed Rule 1.2(c) in the context of the duties of a debtor's counsel to review reaffirmation agreements. In *Minardi*, the court stated:

> Attorneys representing individual debtors in consumer cases filed under Chapter 7 of the Bankruptcy Code have certain essential duties they must perform. They must help debtors file the necessary petition, schedules, statements, and pleadings. They must attend the scheduled meeting of creditors. Most relevant here, attorneys representing consumer debtors must advise and assist their clients in complying with their

responsibilities assigned by Section 521 of the Bankruptcy Code, including helping their clients decide whether to surrender collateral or instead to reaffirm or to redeem secured debts. This obligation is one of a debtor's attorney's primary and essential responsibilities, particularly after the passage of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act, which made the decision more difficult and more complicated. If a hearing is scheduled on a reaffirmation agreement, the attorney must attend the hearing with his or her clients. If an attorney cannot perform these necessary duties, the attorney should not accept bankruptcy cases.

*In re Minardi* 399 B.R. 841, 849 -850 (Bkrtcy.N.D.Okla.,2009).

(z) Rule 1.7(a)(2) of the Louisiana Rules of Professional Conduct and the ABA Model Rule each provide, in pertinent part, as follows:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person *or by a personal interest of the lawyer*.

State Bar Articles of Incorporation, Art. 16, Rules of Prof. Conduct, Rule 1.7, LSA-R.S. 37:222 (emphasis added); **See also** Rule 1.7, ABA Model Rules of Professional Conduct.

(aa) A conflict of interest exists between Collier and the Debtor within the meaning of Rule 1.7(a)(2) of the Louisiana Rules and ABA Model Rules because there is a "significant risk" that the representation will be "materially limited" by a "personal interest" of Collier.

(bb) The violations of Rule 1.2(c) and Rule 1.7(a)(2), trigger the provisions of Rule 8.4(a)(defining professional misconduct as the violation of the Rules of Professional Conduct).

(cc) The Trustee has provided evidence of a specifically identifiable appearance of improper conduct which proves the existence of a conflict of interest within the meaning of Rule 1.7(a)(2) of the Louisiana Rules and the ABA Model Rules. *Forsyth v. Barr*, 19 F.3d 1527, 1546 (5th Cir. 1994) (placing the burden of establishing a conflict on the party seeking disqualification).

**THEREFORE, IT IS ORDERED THAT:**

1. After examining the transactions in this case between the Debtor and her counsel and pursuant to the provisions of 11 U.S.C. §§ 105(a) and 329 and Bankruptcy Rules 2016(b) and 2017, the court, on its own initiative, hereby requires Collier to disgorge all fees collected from the Debtor by virtue of the post-petition ACH debit authorization.

2. The two-contract procedure used by Collier in this case which used a pre-petition contract to initiate a bankruptcy case and then provided for the termination of legal representation after the case was started, does not comply with the "material requirements" of § 528 of the Bankruptcy Code governing debt relief agencies.

3. The pre-petition retainer agreement and post-petition retainer agreement used in this case are void pursuant to the provisions of § 526(c)(1) of the Bankruptcy Code because they do not comply with the "material requirements" of § 528.

4. The relief requested in the Motion be and is hereby **DENIED**. Collier shall continue to serve as counsel for Debtor but shall do so without entitlement to compensation. Collier may not debit the Debtor's bank account for any reason.

# # #

**ORDER PREPARED AND SUBMITTED BY:**
/s/ John S. Hodge
John S. Hodge, Bar No. 18951
P.O. Box 21990
Shreveport, Louisiana 71120-1990
(318) 226-9100
TRUSTEE